**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JUAN PABLO ARREOLA, | |
| Petitioner, | 20-CV-1490 (RMB) |
| -against- | 15-CR-0824-01 (RMB) |
| UNITED STATES OF AMERICA, | **DECISION & ORDER** |
| Respondent. | |

On February 19, 2020, Juan Arreola ("Arreola" or "Petitioner") filed a *pro se* petition, pursuant to 28 U.S.C. § 2255, challenging his conviction of conspiracy to distribute and possess with intent to distribute one or more kilograms of heroin. (Pet., dated Feb. 19, 2020 ("2/19/20 Pet.").) On July 23, 2020, Arreola filed an amended § 2255 petition, including numerous additional applications, allegations, and claims. (Am. Pet., dated July 23, 2020 ("7/23/20 Am. Pet.") (collectively, "Petition").)

Arreola also alleges multiple reasons that his CJA counsel, Richard H. Rosenberg ("Rosenberg" or "Defense Counsel"), was "ineffective," (2/19/20 Pet. at 13), and claims the Government engaged in misconduct, (*id.* at 5.) Arreola also seeks an "evidentiary hearing" and an order vacating his judgment and sentence and granting a new trial. (7/23/20 Am. Pet. at 26.)[1]

---

[1] On July 9, 2020, Arreola also filed a request that the Court issue a subpoena to the California Department of Motor Vehicles ("California DMV"), along with a motion to seal his document request; and on March 11, 2021, he filed a motion requesting that the Court issue subpoenas for an individual named "Artush Edvin Tavnia" and for the Lynwood, California entities, "Auction Connection" and "Mec Auto, Inc." (collectively, "Subpoena Requests"). On November 9, 2020, Arreola filed a motion for default judgment contending that the Government had failed to respond to the Petition. (Mot. for Default Judgment, dated Nov. 9, 2020.) And, on July 1, 2021, Arreola filed a motion for "Substitution of counsel," *i.e.*, seeking to replace Defense Counsel with himself. (Mot. for Subst. of Counsel, dated July 1, 2021.)

The Court perceives no merit in any of Arreola's § 2255 claims and/or applications. Arreola's CJA counsel was not legally ineffective.  Rather, he appears to have taken all steps reasonably necessary to defend this Federal heroin-trafficking conspiracy, as documented in detail in Rosenberg's Declaration, dated August 13, 2020 ("Rosenberg Declaration"), and the Government's Memorandum of Law, also dated August 13, 2020 ("Government Response").  The evidence presented at Arreola's S.D.N.Y. trial was powerful and included, among other things, incriminating text messages and recorded telephone calls, seizures of unlawful drugs, and testimony of cooperating witnesses Miguel Chavez, Lou Lombard, and Patrick Edwards.  *See Strickland v. Washington*, 466 U.S. 688 (1984).  And, Arreola cannot be said to have been prejudiced by measures that his counsel took.

Because this is an "ineffective assistance" case, it is noteworthy that, in addition to his CJA counsel, Arreola was regularly advised by and consulted with a California criminal defense lawyer whom Arreola selected, Michael McDonnell.  For example, McDonnell consulted with Arreola when Arreola was out on bail in California.  (*See* Rosenberg Decl. at 4.)[2]

---

[2] The Rosenberg Declaration includes the following:

> On March 13, 2016 I received an email from Michael McDonnell, Esq. who introduced himself as a criminal defense attorney in Southern California for some 48 years specializing in major drug cases.  He stated that a friend of Mr. Arreola referred . . . him and that Mr. Arreola came to see him about his case and brought with him the complaint, indictment and "paper work" I had provided to Mr. Arreola.  Mr. McDonnell stated that he was not hired to substitute for me but that Mr. Arreola wished for him to be available to him as someone local that he could confer with. . . . Mr. McDonnell stated that he would be a "local sounding board" for Mr. Arreola . . . .

> . . . I had numerous phone conversations with Mr. Arreola in Mr. McDonnell's presence to go over the case and the state of the case as it progressed including discussions as to whether Mr. Arreola should proceed to trial or enter a guilty plea.

For the reasons stated herein, Arreola's Petition and his supplemental applications are all respectfully denied.[3]

I.   **Background**

Between 2013 and 2015, Arreola, who was living in California, imported heroin (and other narcotics) into the United States from individual suppliers associated with Mexican cartels. (*See* Trial Tr. at 120–22, 142–45; Presentence Investigation Report, dated Oct. 19, 2016 ("PSR") at 3.) Arreola sold the narcotics to co-conspirators who were "distributors in the New York area." (*Id.*) Arreola was arrested on October 5, 2015. (*Id.* at 1.)

Following a four-day jury trial, Arreola was found guilty of "conspiracy to distribute and possess with intent to distribute heroin." (*See* Trial Tr. at 642:11–13.) The Government's evidence at trial clearly established that Arreola conspired to distribute, and distributed "dozens of kilograms of heroin." (Gov't Resp. at 5 (citing Sent'g Tr., dated Nov. 17, 2016, at 7).) The Government called eight witnesses, including three law enforcement officers and three cooperators. The cooperating witnesses had each pled guilty to participating in the heroin-trafficking conspiracy.[4] (*See, e.g.*, Trial Tr. at 118–119, 299–300, 422.) Their testimony was corroborated by shipping records; text messages; audio recordings of Arreola discussing drug trafficking business; and kilograms of drugs. (*See, e.g., id.* at 118–267, 275, 279–83, 288, 298–410, 423–516.) Edwards

_____

(*Id.*)

[3] **Any issues raised by the parties not specifically addressed herein were considered by the Court on the merits and rejected.**

[4] Chavez testified that he was "the middleman" in the drug trafficking conspiracy who "was paid $500 per kilo" by Arreola. (Trial Tr. at 329:2–9.) Lombard testified that he was also a middleman in the conspiracy who "brokered the deal between [him]self and the buyer and found sellers." (*Id.* at 120:7–9.) And Edwards testified that his role was to "ship heroin for the defendant" and "deliver the heroin to New York." (*Id.* at 444:22–445:5.)

testified that "approximately every month," Arreola paid Edwards a thousand dollars per kilo to "ship and deliver the heroin to New York." (*Id.* at 431, 444:22–24.) Lombard made a recorded phone call to Arreola "to discuss particulars about the pending payment that was due for the drugs." (*Id*. at 182:4–6; *see also id*. at 181:23–182:2, 183–191.)[5]

At sentencing on November 17, 2016, the Court determined that Arreola had been involved in the distribution of "57 kilos of heroin, and 78 kilos of cocaine," not including "any combinations of heroin and cocaine shipment." (Sent'g Tr. at 7:11–18.) The Court also found that, under Section 4B1.1 of the United States Sentencing Guidelines ("Guidelines"), Arreola was a "career offender." (*Id.* at 11:7–25.) Among other things, "he ha[d] two prior controlled substance offense convictions." (*Id.* at 11:17–21.) The Court found that Arreola had an extensive criminal history starting at the age of 18 and including "[u]sing false identification, taking a vehicle without consent, receiving stolen property, carrying a concealed weapon . . . having had a prior felony conviction, multiple convictions for possessing marijuana for sale, . . . felon in possession of a firearm, assault, driving under the influence of alcohol . . . and . . . drugs, battery, and multiple convictions of driving with a suspended license." (*Id.* at 14:25–15:8.)

Arreola's Guidelines range was 360 months to life; his offense level was 38; and his Criminal History Category was VI. (*See* PSR ¶¶ 25, 103.) The Court sentenced Arreola to a (below-Guidelines) term of 180 months of imprisonment and five years of supervised release. (Judgment, dated Nov. 17, 2016, at 2.)

On December 1, 2016, Arreola appealed to the United States Court of Appeals for the Second Circuit arguing, among other things, that the district court "erred in allowing the

---

[5] Arreola did not testify at trial. Nor did he call any witnesses or offer any exhibits into evidence. (*See* Trial Tr.)

government to present evidence of uncharged cocaine sales as direct evidence of the crime." (Arreola Appellate Br., dated May 8, 2017, at 3, 10.)  He also contended that "the government improperly vouched for the credibility of its cooperators."  (*Id.* at 20.)  On March 13, 2018, the Court of Appeals affirmed Arreola's conviction, ruling that (1) "[t]he district court was . . . well within its discretion . . . in admitting evidence of Arreola's cocaine dealing as direct evidence of the charged heroin conspiracy;" (2) "Arreola fail[ed] to meet th[e] heavy burden" of demonstrating a "substantial likelihood that [he] may have been convicted of an offense other than that charged in the indictment;" and (3) the Government did not commit flagrant abuse nor did it cause Arreola substantial prejudice when "explain[ing] the incentives for . . . cooperating witness[es] to tell the truth."  *United States v. Edwards*, 723 Fed. App'x 48, 50–53 (2d Cir. Mar. 18, 2018).

The U.S. Supreme Court denied Arreola's petition for a writ of certiorari on February 19, 2019.  *See Arreola v. United States*, 139 S. Ct. 1220 (2019).

### § 2255 Petition

In the instant Petition, Arreola argues that his counsel was ineffective in that, among other things, he failed to take the following measures: (1) move for an evidentiary hearing to challenge the admissibility of cooperating witnesses' testimony and renew a Rule 403 motion to exclude their testimony; (2) object to "vouching" during the Government's summation; (3) investigate the facts of the case, consult with Arreola, or hire an investigator; (4) renew a motion for a change of venue (from the Southern District of New York to the Central District of California) and move for a bill of particulars; (5) file a Rule 29 motion for acquittal and/or a Rule 33 motion for a new trial; (6) request an instruction that the jury consider a witness' prior criminal history in assessing his credibility; and (7) challenge the drug weight and the Probation Department's recommendation at

sentencing (of 30 years of incarceration) by requesting a *Fatico* hearing and obtaining certified copies of Arreola's prior convictions.  (*See* 2/19/20 Pet.; 7/23/20 Am. Pet.)

The Government persuasively opposes the Petition and argues convincingly that Arreola fails to overcome the extensive evidence the Government presented at trial.  The Government also contends that Arreola does not meet the test for ineffectiveness under *Strickland v. Washington*, 466 U.S. 688 (1984).  (Gov't Resp., dated Aug. 13, 2020, at 13, 16–17, 20–24.)[6]  The Government also contends that there is no need to conduct any hearing.  (*Id.* at 25.)  "Arreola's claims should be dismissed in their entirety on the merits."  (*Id.*)

The Government's arguments include the following: (1) "Arreola cannot show his counsel's decision not to move for the evidentiary hearing or renew the motion under Rule 403 fell below an 'objective standard of reasonableness' or resulted in prejudice," (*id.* at 10–11); (2) Arreola's claim that the Government improperly vouched for its witnesses during summation is "meritless," (*id.* at 13); (3) "Arreola cannot show his counsel's interviewing and investigation process was deficient," or that "hiring a private investigator would have had any impact on the outcome of the trial," (*id.* at 19–20); (4) "Arreola cannot overcome the presumption that his defense counsel's decision not to renew the motion for a change of venue was sound trial strategy," nor does Arreola "allege any prejudice that resulted from counsel's decision not to move for a bill of particulars," (*id.* at 16–17); (5) any effort to file a Rule 29 motion for a judgment of acquittal or a Rule 33 motion for a new trial would have been futile, (*id.* at 21–22); (6) Defense Counsel "made

---

[6] *Strickland* provides the legal standard "for judging ineffectiveness [of counsel] claims." 466 U.S. at 698.  Under the first *Strickland* prong, the petitioner must show that his counsel's representation "fell below an objective standard of reasonableness" under "prevailing professional norms."  *Id.* at 688–89, 693–94.  Under the second prong, the petitioner must show "that there is a reasonable probability that, but for counsel's [alleged] unprofessional errors, the result of the proceeding would have been different."  *Id.*; *see also* p. 8, *infra.*

sure the jury was aware of Lombard's prior arrests" and "in fact . . . began his cross-examination . . . with a significant discussion of [his] criminal history, including [a] robbery charge," (*id.* at 17); and (7) "Arreola's defense counsel [did] object[] to both the weight of the drugs used to calculate Arreola's offense level . . . and [to] Arreola's criminal history," (*id.* at 23–24).

Defense Counsel also submitted a compelling and comprehensive Declaration.  (*See* Rosenberg Decl.)  For one thing, Rosenberg points out that Arreola's California counsel, Michael McDonnell, "with whom Mr. Arreola consulted on many occasions during the pendency of the criminal prosecution," was involved in Arreola's defense from the time of Arreola's arraignment. (*Id.* at 1, 3–4.)  Rosenberg also contends that: (1) he "did move *in limine* to exclude any testimony and evidence relating to non-charged cocaine trafficking and continued with that objection at and during trial" and at sentencing, (*id.* at 12); (2) he did object to the Government's vouching for its witnesses, (*id.* at 10, 12); (3) he conferred extensively with Arreola and his family and McDonnell about all the "allegations in the complaint," (*id.* at 2), and spent numerous hours reviewing "the case and the discovery" with Arreola, (*id.* at 3).   Rosenberg saw no need for hiring a private investigator in light of powerful Rule 16 discovery and discussions with the Government.  (*Id.* at 6.)  Rosenberg also had numerous phone conversations with Arreola regarding a possible guilty plea, together with McDonnell, who "specializ[ed] in major drug cases" and who believed that "a conviction would be likely," (*id.* at 4); (4) he filed a change of venue motion but did not renew the motion following its denial because there were "no new circumstances," (*id.* at 5, 11).  Rosenberg did not move for a bill of particulars because he did not believe it would be granted "given the particularity of the complaint allegations," (*id.* at 9); (5) he did bring out the criminal backgrounds of cooperating witnesses, (*id.* at 10); and (6) he "spent considerable time and effort to document

and challenge . . . [the] guideline[s] computation," even though Arreola appeared to qualify as "a career offender based on two prior narcotics convictions," (*id.*).

Rosenberg asserts that he "extended his best efforts in defense of Mr. Arreola." (*Id.* at 12.)

## II.   <u>Legal Standard</u>

To prevail on a claim of ineffective assistance of counsel, "[t]he challenger's burden is to show that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quotation and citation omitted).   A defendant must (1) show that his counsel's representation "fell below an objective standard of reasonableness" **and** (2) affirmatively prove "prejudice" by "show[ing] that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S at 688–89, 693–94. **The court "must apply 'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'"** *Rivas v. Fischer*, 780 F.3d 529, 547 (2d Cir. 2015) (emphasis added) (quoting *Strickland*, 466 U.S. at 689). "[S]crutiny of counsel's performance must be 'highly deferential.'" *Rivas*, 780 F.3d at 547 (quoting *Strickland*, 466 U.S. at 689).

Prosecutorial misconduct is a ground for relief only if the conduct caused "substantial prejudice by so infecting the trial with unfairness as to make the resulting conviction a denial of due process." *United States v. Elias*, 285 F.3d 183, 190 (2d Cir. 2002) (internal quotation omitted).

Where a petitioner fails to state a viable claim for relief, "no further evidentiary inquiry [i]s necessary prior to denial [of the petition]." *Abad v. United States*, No. 09 Civ. 8985, 2014 WL 521541, at *1 (S.D.N.Y. Feb. 6, 2014).   Where the district court has "all the relevant facts to

evaluate [the] petition," it may "deny[] [the] petition, as a matter of law, without holding an evidentiary hearing." *Reilly v. Morton*, 213 F.3d 626 (2d Cir. 2000).

"A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). "Rather, discovery is allowed only if the district court, acting in its discretion, finds 'good cause' to allow it." *Ferranti v. United States*, 480 F. App'x 634, 638 (2d Cir. 2012) (citing *Bracy*, 520 U.S. at 904); *see also* Rule 6 of the Rules Governing Section 2255 Proceedings.

"There is a presumption favoring public access to judicial records." *Suber v. VVP Servs., LLC*, No. 21-2649, 2023 WL 115631, at *4 (2d Cir. Jan. 10, 2023) (citation omitted). "Public scrutiny of proceedings regarding petitions for writs of habeas corpus is particularly important." *Doe v. Greiner*, 662 F. Supp. 2d 355, 360 (S.D.N.Y. 2009) (citing *Mancuso v. Harris*, 677 F.2d 206, 209 (2d Cir. 1982)). Courts do not seal documents absent "an extraordinary circumstance or compelling need." *Delta Air Lines, Inc. v. Bombardier, Inc.*, 462 F. Supp. 3d 354, 356 (S.D.N.Y. 2020) (quoting *Video Software Dealers Ass'n v. Orion Pictures Corp.*, 21 F.3d 24, 27 (2d Cir. 1994)) (internal quotation marks omitted).

## III.  Analysis

### Evidentiary Hearing Not Called For

Arreola contends that his counsel was ineffective in failing to move in the trial court for an evidentiary hearing regarding the admissibility of co-defendant witnesses' testimony about cocaine distribution. (2/19/20 Pet. at 63–64.) Arreola contends that an evidentiary hearing would have allowed the Court "to determine the evidentiary foundation for introducing other drug

9

evidence, weighing the probative value against its substantially greater prejudice to the petitioner's right to a fair trial." (*Id.* at 64.)

On June 29, 2016, the Government moved *in limine* to admit co-conspirator witnesses' "testimony regarding the defendant's distribution of cocaine as direct evidence" of the charged heroin conspiracy. (Gov't Ltr., dated June 29, 2016, at 1.) And, in fact, on July 6, 2016, Defense Counsel opposed the Government's motion *in limine*. (*See* Rosenberg Ltr., dated July 6, 2016.) Defense Counsel argued that evidence of Arreola's alleged cocaine-trafficking should be excluded because it was "not alleged by the charges in this indictment" and was not "inextricably intertwined" with the charged conduct of heroin-trafficking. (*Id.* at 1 (citations omitted).) Defense Counsel also argued that the Court should exclude testimony regarding alleged cocaine-trafficking under "the balancing test of Rule 403" because "it is clear that the danger of unfair prejudice of the proposed testimony far outweighs its probative value." (*Id.* at 2.) The Court granted the Government's motion *in limine* at a pre-trial conference on July 11, 2016. (*See* Hr'g Tr., dated July 11, 2016.) After considering Defense Counsel's opposition, the Court ruled that it would "allow the proffered testimony regarding cocaine distribution as direct evidence of the charged heroin offense" because the evidence was "inextricably intertwined" and provided "background to the conspiracy, helping the jury understand how the illegal relationship among the participants developed." (Hr'g Tr., dated July 11, 2016, at 6:3–15, 7:2–4 (quoting *United States v. Escalera*, 535 F. App'x 27 (2d Cir. 2013).)

Upon appeal, the Second Circuit held that "[t]he district court was . . . well within its discretion . . . in admitting evidence of Arreola's cocaine dealing as direct evidence of the charged heroin conspiracy." *Edwards*, 723 F. App'x at 50 (citation omitted) (alterations adopted). "The

uncharged cocaine trafficking was inextricably intertwined with the charged heroin trafficking and was also background to the conspiracy." *Id.*

The Government persuasively contends, "Arreola was not entitled to an evidentiary hearing on the Government's motion . . . because there were no disputed facts." (Gov't Resp. at 12.)  And, as noted, Defense Counsel did argue that the cocaine-trafficking testimony should be excluded under Rule 403.  (*See* 7/6/16  Rosenberg Ltr.; *see also* Rosenberg Decl. at 9.)  Defense Counsel "reasonably determined" that a renewed effort "to exclude the cocaine testimony under Rule 403 or a motion for reconsideration lacked . . . foundation and would not have been successful." (Gov't Resp. at 12; *see also Abad*, 514 F.3d at 275–76 (counsel is not "ineffective for failing to make a motion that would have been futile.").)

**Objection During Government's Summation**

Arreola contends that his counsel "unreasonably failed to object to the government's 'vouching' for its witnesses" during the Government's summation.  (2/19/20 Pet. at 35.)  This contention is denied because Section 2255 ineffective assistance of counsel claims are precluded if they were already raised and resolved on direct appeal.  *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010).  This rule precludes claims that were "impliedly rejected by the appellate court mandate," as well as arguments that were "explicitly raised on direct appeal." *Id.* (citation omitted).

The Government's summation statements were reviewed on appeal and determined to have been properly related to the credibility of Government witnesses.  *Edwards*, 723 F. App'x at 52.  "[T]he substantive issues underlying Areola's claims about the Government improperly vouching for its witnesses in closing arguments were fully litigated before the Second Circuit." (Gov't Resp. at 14; *see also Yick Man Mui*, 614 F.3d, at 53.)

Moreover, in his closing, Defense Counsel challenged the Government's summation arguing that the Government's witnesses lacked credibility, and stating that "instead of hard evidence, the government wants you to accept the lies of . . . desperate men . . . ." (Trial Tr. at 572:21–23; *see also id.* at 562:18–22.)

Defense Counsel's decision to object during opposing counsel's summation is clearly "a strategic choice, which is 'virtually unchallengeable.'" *United States v. Gaskin*, 364 F.3d 438, 468 (2d Cir. 2004) (citation omitted); *see also Brown v. Artuz*, 124 F.3d 73, 77 (2d Cir. 1997); *United States v. Daniels*, 558 F.2d 122, 127 (2d Cir. 1977) ("[T]here is no merit to [the] claim that counsel should have objected to an allegedly improper remark made by the prosecutor during the summation . . . . Defense counsel specifically responded to this remark in his own summation and the decision whether to object . . . or to wait and attack [the remark] in the defense summation was strictly a matter of tactics.") (citations omitted).

### Consultation with Client and Investigation by Counsel

Petitioner contends that his counsel "left the petitioner without a viable defense" by failing to "competently interview" Arreola **or** to investigate "the actual ownership of 'Luxury' cars and how much the petitioner paid for them." (2/19/20 Pet. at 19, 22, 27.)

Defense Counsel counters that Arreola's allegation that counsel failed to conduct interviews with Arreola and others regarding the facts of the case "is completely untrue." (Rosenberg Decl. at 2.) The Rosenberg Declaration goes into great detail about the extensive preparation and efforts made on behalf of Arreola. Rosenberg points out that he conducted his own research, (*id.*), and also "spent at least twenty hours consulting with Mr. Arreola [and attorney McDonnell] prior to trial either in person or by telephone or by text and/or emails," (*id*. at 8 (emphasis omitted)). This included, among other things, a three-hour meeting with Arreola before

his October 5, 2015 presentment, (*see id.* at 1–2); "regular telephone contact with the defendant's family members and the defendant" during the weeks that followed the initial appearance and following Arreola's October 24, 2015 Indictment, (*id.*); multiple consultations with Arreola "reviewing the case and discovery" after Arreola's December 10, 2015 arraignment, (*id.* at 3); a two-and-a-half-hour meeting with Arreola the day before his February 23, 2016 arraignment (on the Superseding Indictment) and a one-and-a-half-hour meeting with Arreola the day following, (*id.*); multiple consultations with Arreola after Rosenberg received additional discovery in January, February, and March of 2016, (3); "numerous phone conversations with Mr. Arreola in Mr. McDonnell's presence to go over the case and the state of the case as it progressed" during the weeks following McDonnell's March 13, 2016 outreach to Rosenberg, (*id.* at 4); consultation with Arreola in late April 2016 after the Government informed Rosenberg of additional cooperating witnesses, (*id.* at 5); "numerous" consultations with Arreola following Rosenberg's June 8, 2016 discussion with the Government regarding a plea agreement, (*id.* at 6); meetings with Arreola to further review the case at the time the Court denied the Government's motion for remand on June 29, 2016, (*id.* at 6–7); and multiple consultations with Arreola after Rosenberg received additional discovery and 3500 material "over the July 4 weekend" prior to trial, (*id.* at 7).

The Rosenberg Declaration also states that Rosenberg asked Arreola "on several occasions pre-trial to supply [counsel] with documentary proof regarding his car restoration business and, in particular, the automobile that he claimed he restored for [co-defendant] Mr. Lombard and for which [Arreola] claimed was owed money." (*Id.* at 8.) Arreola did not comply with these requests. (*Id.*)  "Arreola was similarly unhelpful in providing information regarding his relationship with [co-defendant] Mr. Chavez and consistently insisted that Mr. Chavez would not be a cooperating witness against him at trial despite counsel's repeated advice that indeed Mr. Chavez would be a

trial witness." (*Id.*)  "Arreola insisted prior to trial that he did not even know [co-defendant] Mr. Edwards." (*Id.*)

During his cross-examination of cooperating witnesses, Defense Counsel argues that he sought, among other things, to demonstrate that the luxury cars in question were acquired by Arreola at low cost and in states of disrepair.  He sought to challenge "the Government's theory that [Arreola] had a great deal of money because he was a drug dealer as suggested by his purchase of several luxury vehicles." (2/19/23 Pet. at 28.)  In responding to Defense Counsel's cross-examination, co-conspirator Miguel Chavez admitted that a 1957 Chevy "was a rust bucket when [Arreola] bought it," (Trial Tr. at 394:5–6; *see also id.* at 394:8–395:5), that a Lamborghini "was a crash car . . . that was rear ended," (*id.* at 391:5–8), and that an Aston Martin "was also a crash car . . . that had to be restored," (*id.* at 395:12–17).  Defense Counsel had "requested Mr. Arreola to provide counsel with his business records" in order to determine vehicle cost basis and ownership.  (Rosenberg Decl. at 9.)  "[N]one were provided." (*Id.*)

Arreola has not demonstrated that his counsel's interview and investigation techniques were deficient.  He has not overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S at 689.  Arreola has failed to show "deficient performance prejudiced [his] defense." *Id.* at 687.  Arreola's drug trafficking conviction was based upon overwhelming evidence of guilt.  (*See* above discussion at pp. 3–4, *supra*; *see also Strickland*, 466 U.S at 687 ("[C]ounsel's assistance [was not] so defective as to require reversal of a conviction" unless the "errors were so serious as to deprive the defendant of a fair trial.").)

**Venue Motion and Bill of Particulars**

Arreola contends that Defense Counsel was ineffective because he "failed to renew the defense motion for a change of the trial's venue to the Central District of California" and because he failed to move for a bill of particulars. (2/19/20 Pet. at 30–32.) Defense Counsel points out that he did file a motion for a change of venue from the Southern District of New York to the Central District of California on May 18, 2016, even if counsel believed it was "unlikely to prevail." (Rosenberg Decl. at 5–6; *see also* Def's Ltr. in Supp. of Mot. for Transfer of Venue, dated May 18, 2016.)[7] Defense Counsel also points out that he did not move for a bill of particulars because "the complaint filed in the case was detailed and the discovery process was begun early and was continuous." (Rosenberg Decl. at 9.)

Arreola does not overcome the presumption that Defense Counsel's pre-trial motion decisions were "sound trial strategy." *Strickland*, 466 U.S at 688–89; *see also Abad*, 514 F.3d at 275–76. Nor does Arreola show prejudice. (Gov't Resp. at 16–17; *see also* 2/19/20 Pet. at 30–32; *Strickland*, 466 U.S at 688–89.) The outcome of the trial likely would not have been different had counsel filed either of these two motions. *Strickland*, 466 U.S at 694.

**Rule 29/Rule 33 Motions**

Arreola contends that Defense Counsel "told the petitioner he would move for a judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure and move for a new trial under Rule 33" but that he failed to do so. (2/19/20 Pet. at 33.) "Because trial counsel did not

---

[7] The Court denied the venue motion on June 16, 2016 concluding that Arreola had "not met [his] burden of showing that those factors and/or the interests of justice require a transfer of this case to California." (Hr'g Tr., dated June 16, 2016, at 8–9.) The "cooperating witnesses [were] . . . in New York, some of whom are incarcerated," (*id.* at 4:19–22), "the complaint underlying the indictment relates to two seizures of heroin in the New York area and events surrounding those seizures," (*id.* at 5:1–3), and "the New York component of the conspiracy will be the [Government's] greater focus" at trial, (*id.* at 5:7–8).

move for a new trial, counsel could not renew [the] motion to transfer" venue, "move to strike the evidence of other alleged drug sales," or "investigate the falsity of the government's witnesses' claim that [Arreola] bought luxury cars with drug proceeds." (*Id.*)[8]

Defense Counsel states that he "never misled" Arreola regarding these motions, and that he determined based upon his legal research "that the arguments in support of such [] motion[s] would be better and more effectively raised . . . on appeal." (Rosenberg Decl. at 11.) The Government weighs in and contends that in view of the overwhelming evidence of guilt in this case, (*see, e.g.*, pp. 3–4, *supra*), "Arreola's defense counsel reasonably determined that neither a Rule 29 nor a Rule 33 motion would have been successful." (Gov't Resp. at 23.) "Given the conclusive strength of the government's evidence, a Rule 29 motion would have been unavailing." *Awulye v. United States*, No. 17-cv-4365, No. 13-cr-875-1, 2020 WL 774093, at *4 (S.D.N.Y. Feb. 18, 2020) (citations and quotation marks omitted). "A court may enter a judgment of acquittal [under Rule 29] only if the evidence that the defendant committed the crime alleged is nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt." *United States v. Temple*, 447 F.3d 130, 136 (2d Cir. 2006) (alterations adopted) (citation and quotation marks omitted). "With respect to *Strickland*'s first prong, there is no professional requirement that defense counsel file a motion for a judgment of acquittal . . . no matter the merits of the motion." *Awulye*, 2020 WL 774093 at *4; *see also Abad*, 2014 WL 521541, at *1. And, a court may not grant a new trial under Rule 33 unless "letting a guilty verdict stand would be a manifest injustice,"

---

[8] Federal Rule of Criminal Procedure 29(c) provides, in relevant part: "If the jury returns a verdict of guilty or is discharged without having returned a verdict, a motion for judgment of acquittal may be made or renewed within 7 days after the jury is discharged or within such further time as the court may fix during the 7-day period." *United States v. Padilla*, No. S1 94 CR. 313, 1998 WL 23550, at *1 (S.D.N.Y. Jan. 20, 1998) (citing Fed. Rule of Crim. Proc. 29(c)).

Under Federal Rule of Criminal Procedure 33, the court may "vacate any judgment and grant a new trial if the interest of justice so requires."

and there is "a real concern that an innocent person may have been convicted." *United States v. Canova*, 412 F.3d 331, 349 (2d Cir. 2005) (citation and quotation marks omitted).

Arreola has not (remotely) demonstrated either that his counsel was deficient, or that counsel's performance resulted in any "prejudice" to Arreola. *See Strickland*, 466 U.S at 687, 689, 694. "[T]he Government presented more than sufficient evidence for the Court to . . . maintain the jury's guilty verdict" and deny the motions. (Gov't Resp. at 23.)

**Jury Instruction Regarding Criminal History**

Arreola contends that Defense Counsel failed to seek an instruction from the Court "informing the jury [that it] could consider Lombard's prior robbery conviction in . . . evaluating his credibility." (2/19/20 Pet. at 66.) In response, Rosenberg points out that "[i]n reviewing the discovery and 3500 material and in light of the evidence largely based on cooperator testimony[,] it was counsel's approach as trial defense to challenge the credibility of the testifying cooperators [on cross-examination] and the lack of any evidence linking . . . Arreola to . . . the drug trafficking testified to by the cooperators." (Rosenberg Decl. at 8.) "Counsel did, contrary to the allegations in the petition, bring out, to the extent permitted by the Court, the criminal backgrounds, convictions and prior drug dealings of the cooperating coconspirators," and he "argued strenuously at summation that their credibility was wanting." (*Id.* at 10.) In addition, counsel "brought out at trial the absence of proof connecting Mr. Arreola to the drug activities of these men other than their self-serving testimony." (*Id.*) During the cross-examination, Rosenberg posed this question: "When you were arrested back in 2013, there were charge[s] that you were carrying a loaded firearm, you were charged with receiving stolen property, and you were charged with possession of meth[amphetamine]." (Trial Tr. at 366:11–14.) Co-defendant Lombard responded: "I

remember this.  I only pled guilty to the drugs charge. . . . [As to the] weapon or receiving stolen property [charges] . . . . I was probably charged with it . . . .".).)  (*Id.* at 366:24–367:10.)

The Government contends that "Arreola cannot overcome the presumption that his defense counsel's decision not to seek this jury instruction was sound trial strategy."  (Gov't Resp. at 17.)  "Arreola's counsel made sure the jury was aware of Lombard's prior arrests."  (*Id.*)

Counsel was not deficient.  *See, e.g.*, *Aparicio v. Artuz*, 269 F.3d 78, 99 (2d Cir. 2001) (where counsel was not ineffective due to "failure to request an additional [jury] instruction"); *United States v. Javino*, 960 F.2d 1137, 1145 (2d Cir. 1992).  Nor has Arreola shown that any prejudice resulted from counsel's decision not to request the jury instruction.  *See Strickland*, 466 U.S at 688–89.  "[T]he jury was already aware [that] it could consider Lombard's criminal history in determining his credibility."  (Gov't Resp. at 18.)

**Hearing Regarding Drug Weight**

Arreola contends that "defense counsel did not challenge the drug amount used to calculate the sentencing guidelines."  (2/19/20 Pet. at 68.)  Arreola also contends that his counsel "failed to secure certified copies of [Arreola's] prior California convictions" to demonstrate that Arreola is not "a career offender." (*Id.* at 38–39.)

Defense Counsel Rosenberg counters that he "spent considerable time and effort to document and challenge th[e] guideline computation" that had been recommended by the Probation Department which was 360 months of imprisonment to life.  (Rosenberg Decl. at 10.)  The efforts by counsel on behalf of Arreola included "more than six hours of research on . . . Arreola's criminal history, [and] reaching out to his prior defense counsel."  (*Id.*)  The Probation Department's PSR stated that Arreola distributed "at least 70 kilograms of heroin and at least 100 kilograms of cocaine," and that Arreola was "a career offender" because he had "at least two prior

felony convictions of either a crime of violence or a controlled substance offense." (PSR at 5–6.) Defense Counsel states that he did in fact raise objections to the PSR determination of drug amounts. (*See* Rosenberg Decl. at 10–11; Def. Counsel's Sent'g Submission, dated Nov. 3, 2016, at 4 ("The only drugs introduced into evidence [at trial] were two kilograms of heroin.").) "[C]ounsel challenged the criminal history computation on various factual grounds" even though Arreola was considered a career offender because of two prior narcotics convictions. (Rosenberg Decl. at 10; *see also* PSR at 19 ("The defendant has an extensive criminal history which consist[s] of drug-related, assaultive, and DUI offenses. Arreola has displayed his unwillingness to lead a law abiding life. . . . As such, **he has been classified as a 'career offender.'**"); Sent'g Tr. at 11–12 (emphasis added).)

The Government points out that the Court considered Defense Counsel's arguments regarding Arreola's criminal history and drug weight and "determined the weight of the drugs to be 57 kilograms of heroin and 78 kilograms of cocaine." (Gov't Resp. at 24 (citing Sent'g Tr. at 7).)[9]

The Government states that a "motion for a *Fatico* hearing is [the] exact kind of frivolous motion counsel is not required to make to provide effective assistance" because the trial evidence "supported the drug weights identified in the Pre-Sentence Report far beyond a preponderance of the evidence." (Gov't Resp. at 24; *see also Abad*, 2014 WL 521541, at *1.) And at sentencing, the Court considered the Government's argument that "the testimony provided at trial, among other

---

[9] The Court agreed that Arreola is a "career offender" because of his "two separate convictions for possessing marijuana for sale." (Sent'g Tr. at 11:17–22.) The Court also confirmed that Arreola's criminal history category was VI. (*Id.* at 12:2–4.) And, the Court noted that "**even if the Court were to agree with each of [Defense Counsel's] objections to the criminal history category, the remaining criminal history category points would still place . . . Arreola in a criminal history category of VI.**" (*Id.* at 12:5–9 (emphasis added).)

testimony, by Louis Lombard, Miguel Chavez, and Patrick Edwards regarding these respective [drug] amounts . . . corroborated one another, and was further corroborated by . . . evidence which included . . . Federal Express receipts and recorded phone calls." (Sent'g Tr. at 6:5–11.)  The Court also considered the Government's argument that "the extent of [Arreola's] drug dealing is also supported by seizures [of drugs] from [his] supplier, . . . as testified to by [a Drug Enforcement Agency] Special Agent."  (*Id.* at 6:16–20.)  The Court concluded that, "from the perspective most favorable" to Arreola, "the following amounts of narcotics were involved in this conspiracy for which he's been convicted:. . . 40 kilograms of heroin, based on Lombard's testimony; 45 kilograms of cocaine, based on Chavez's testimony; 33 kilograms of cocaine, based on Edwards' testimony," and "17 kilograms of heroin based on the Edwards testimony."  (*Id.* at 7:1–10.)

Arreola does not explain how, if at all, a *Fatico* hearing would have resulted in a different drug weight determination, let alone how it would have resulted in a different sentence.  (*See* 2/19/20 Pet. at 68; *see also Strickland*, 466 U.S at 688–89, 693–94.)

The Court also finds that a motion for certified copies of Arreola's California's convictions would have been "frivolous."  (*See* Gov't Resp. at 24.)  Defense Counsel "already had Areola's criminal history records at sentencing through the Pre-Sentence Report."  (Gov't Resp. at 24; *see also United States v. Patasnik*, 89 F.3d 63, 68 (2d Cir. 1996).)  Arreola's "career offender status was based on his two prior convictions for possessing marijuana for sale, and Arreola does not claim his records presented anything to contradict those convictions (and nor could he)."  (Gov't Resp. at 25 (citing 2/19/20 Pet. at 69).)

**Vouching**

Arreola alleges that the Government "engaged in prosecutorial misconduct when it vouched for its witnesses and falsely argued facts not in evidence to persuade the [j]ury the [co-

conspirator] witnesses told the truth." (2/19/20 Pet. at 39; *see also id.* at 5–6; 40–42.) Arreola also contends that the Government failed to investigate whether Arreola paid "hundreds of thousand[s] for the luxury vehicles" or whether Arreola even owned the vehicles. (*Id.* at 8; *see also* pp. 11–14, *supra.*)

Arreola raised (and lost) the vouching argument on direct appeal. *See Edwards*, 723 Fed. App'x at 52–53. On appeal, the Second Circuit held that the Government was not engaged in improper vouching. *Id.* (citation and quotation marks omitted). Arreola's prosecutorial misconduct claim was "raised and resolved on direct appeal." *Yick Man Mui*, 614 F.3d at 53.

Moreover, Arreola does not meet "the heavy burden facing a habeas petitioner seeking reversal of his conviction on the basis of alleged prosecutorial misconduct." *Henderson v. Martuscello*, No. 10 CIV. 5135, 2013 WL 6463348, at *11 (S.D.N.Y. Dec. 10, 2013). The Government "did not go beyond inferences that might normally be drawn from the evidence" and did not deprive Arreola of a fair trial. *United States v. Wilkinson*, 754 F.2d 1427, 1435 (2d Cir. 1985) (quotation marks and citation omitted).

Arreola has not shown "substantial prejudice . . . so infecting the trial with unfairness as to make the resulting conviction a denial of due process." *Elias*, 285 F.3d at 190; *see also Lee*, 2022 WL 814736, at *4.

**Evidentiary Hearing Regarding Petition Not Necessary**

Arreola requests that the Court schedule an evidentiary hearing in support of his Petition. (*See* 2/19/20 Pet. at  69.)  The Government argues persuasively that "the Court should not conduct a hearing as Arreola's claims should be dismissed in their entirety on the merits." (Gov't Resp. at 24.) The record is sufficient "**to deny each of Arreola's claims because none of them rise to the level of a constitutional violation, even if proved.**" (*Id.* at 26 (emphasis added).)

21

"Section 2255 petitioners are not entitled to an evidentiary hearing as a matter of right; instead, a Section 2255 petitioner must state a 'plausible claim' for relief." *Chen v. United States*, No. 03-CR-734-4, 2016 WL 519617, at *4 (S.D.N.Y. Feb. 3, 2016) (quoting *Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009)); *see also Chang v. United States*, 250 F.3d 79, 85 (2d Cir. 2001) ("The district court reasonably decided that the testimony of [petitioner] and his trial counsel would add little or nothing to the written submissions").  The Court finds unequivocally that the written submissions are sufficient and comprehensive and that Arreola has not demonstrated a plausible claim that requires an evidentiary hearing.  *See Chen*, 2016 WL 519617, at *4; *Chang*, 250 F.3d at 85; *see also Abad*, 2014 WL 521541, at *1.

### Arreola's Subpoena Requests

Arreola requests that the Court issue subpoenas to (1) "the Custodian of the Records for the California Department of Motor Vehicles;" (2) an individual named "Artush Edvin Tavnia" who resides in Lynwood, California; (3) an entity called "Auction Connection" in Lynwood, California; and (4) an entity called "Mec Auto, Inc." in Lynwood, California.  (*See* 3/11/21 Subpoena Requests at 2–3.)  He contends that the point of these subpoenas is to show that he "was denied [the] Constitutional right to due process and a fair trial" and was denied the opportunity to impeach the Government's "untruthful story asking the jury to conclude that the petitioner could afford to buy the luxury cars because he is a drug dealer with a lot of cash."  (7/9/20 Subpoena Requests at 12; 2/19/20 Pet. at 45.)  Arreola also seeks, among other things, certified copies of the "current and past registration history" from the California DMV for each of four luxury vehicles, (7/9/20 Subpoena Request at 2–3), and "business records" regarding "the title, registration" and "contract for sale" for each of four vehicles.  (3/11/21 Subpoena Request at 2.)  Arreola seeks to

impeach "the government's repeated claims" that Arreola "spent hundreds of thousands of dollars on exotic cars."  (7/9/20 Subpoena Requests at 11–13.)

Under Rule 6(a) of the Rules Governing Section 2255 Proceedings, a "judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law."  Rule 6(a); *see also United States v. McLean*, No. 08-CR-789-7, 2022 WL 1125946, at *3 (S.D.N.Y. Apr. 15, 2022). The Court finds that the "good cause" standard under Rule 6(a) is not satisfied.  Arreola does not present "specific allegations before the court [that] show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *Ferranti*, 480 F. App'x 634 (internal quotations omitted); *see also Khan v. United States*, No. 15-CR-804-1, 2021 WL 101974, at *4 (S.D.N.Y. Jan. 12, 2021) (citation and internal quotations omitted).

**Sealing**

Arreola seeks "an order directing the United States District Court Clerk's Office to file under seal his" subpoena requests, (Mot. to Seal, dated July 9, 2020, at 3), contending that he is "acting as [his] own attorney, and therefore . . . ha[s] the same right to attorney work-product and confidentiality as a licensed attorney."  (*Id*.)   Arreola also contends that he has a "right to keep confidential [his] communications and ideals [sic]."  (*Id*.)

The Court finds, as many courts have found, "a presumption favoring public access to judicial records," *Suber*, 2023 WL 115631, at *4 (citation omitted), and "[p]ublic scrutiny of proceedings regarding petitions for writs of habeas corpus is particularly important." *Greiner*, 662 F. Supp. 2d at 360 (quotation omitted); *see also Const. Prod. Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996); *Procter & Gamble Co. v. Ultreo, Inc.*, 574 F. Supp. 2d 334, 336 (S.D.N.Y. 2008); *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 119 F.3d 210, 214

(2d Cir. 1997) ("[A]ttorney-client privilege" applies only where "legal advice of any kind is sought . . . from a professional legal advisor in his capacity as such.").

### Motion for Default Judgment

Arreola contends that because "[t]he government has failed to respond" to his § 2255 Petition, the Court should "render[] a default judgement against the disobedient party." (*See* Mot. for Default Judgment, dated Nov. 9, 2020, at 5–6 (citing Order to Answer, dated Feb. 26, 2020).) The motion is denied because the Government filed a timely response on August 13, 2020. (*See* Dkt. 110, 102, 108.) And, Arreola has responded to the arguments raised in the Government's response. (*See* Dkt. 114.)

### Motion for Substitution of Counsel

Arreola requests that the Court direct the Clerk of Court to "remove Mr. Richard H. Rosenberg, as [his] attorney of record, and in his stead designate" Arreola as *pro se*. (Ltr. from Arreola, dated June 15, 2021, at 1.) This application is denied because Mr. Rosenberg does not appear on the civil court docket in this § 2255 action, and because Arreola is designated as litigating *pro se*.

## IV.   Certificate of Appealability

The Government requests that the Court find that "Arreola has not made a substantial showing of a denial of a federal right[] and that appellate review is therefore not warranted." (Gov't Resp. at 26.) A certificate of appealability is issued where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where, as here, a petitioner has not made such a showing, a certificate of appealability is not warranted. *See Lucidore v. N.Y. State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000); *see also United States v. Mira*, No. 99 CR. 327-01, 2002 WL 31075841, at *2 (S.D.N.Y. Sept. 18, 2002) ("As [§ 2255]

petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue."); 28 U.S.C. § 2253.

**Conclusion & Order**

For the reasons stated herein, Arreola's Petition [# 99], Subpoena Requests [CV Dkts. #14, 21], Sealing Motion [CV Dkts. # 11, 22], Motion for Default Judgment [# 112], and Motion for Substitution of Counsel [# 113]—and any related claims—are respectfully denied. The Clerk of the Court is requested to send a copy of this Decision & Order to Petitioner and to close this case.

Date: New York, New York
       May 12, 2023

                                   _RMB_

                          **RICHARD M. BERMAN**
                                **U.S.D.J.**